## THE MACK.

## THE GERD H. HENJES.

### No. 16206.

District Court, E. D. New York.

Feb. 11, 1942.

Alexander & Ash and Joseph M. Meehan, all of New York City, for libellant.

Robert F. Donoghue, of New York City, for claimant-respondent.

ABRUZZO, District Judge.

The libellant seeks a decree for damages claimed to have been incurred by its coal box "Mack" while it was being towed by claimant-respondent's Diesel tug Gerd H. Henjes on the morning of January 5, 1941.

The master of the claimant's tug has been charged with negligence by the libellant. This is the only issue to be determined. The Mack was damaged by heavy seas and the pounding of the waves against it. It is the libellant's contention that this was due solely to the negligence of the master of the tug Gerd H. Henjes in leaving the harbor when a storm was brewing, disregarding the warnings on the daily local record of the Weather Bureau and a very low and falling barometer.

The testimony disclosed that at 2 a.m. on January 5, 1941, when the voyage commenced, the Mack was the only coal box in tow and it was light. It was to be towed from Mill Basin through Island Channel in Jamaica Bay to Rockaway Inlet and thence to Stapleton, Staten Island. From Rockaway Inlet to Stapleton, Staten Island, the tow would have to pass through open waters. Storm warnings had been posted by the Weather Bureau prior to the commencement of the voyage as follows:

"Small craft warning issued in the New York area from 3:30 p.m. to sunrise. Severe northwest gusts beginning about 7:30 p.m. and strong northwest winds tonight."

"Storm Warning Advisory: Change to northwest storm warning at 10:30 p.m. from Eastport, Maine to Block Island. Severe storm centered about 150 miles east-southeast of Eastport, Maine, moving northeastward will cause strong west and northwest winds, reaching gale force at times tonight and Sunday morning."

On the daily local record of the Weather Bureau where this storm warning appeared, the weather for January 4, 1941 was reported as clear and for January 5, 1941, clear.

At 3 a.m., approximately the time when the tug and its tow was passing through Rockaway Inlet, the wind velocity had reached 22 miles per hour or more. Upon reaching the Marine Bridge, half the voyage had been completed and at that time, the wind velocity on top of the Whitehall Building, New York City, was 29 miles per hour.

Four hours previously, the claimant-respondent had completed the same voyage with an empty coal barge similar to the Mack and no damage ensued.

In establishing the liability of the claimant-respondent it is necessary to take into consideration the possible conditions to be encountered, the weather, and the makeup and character of the tow as well as whether or not the master of the tug exercised ordinary prudence. It is apparent that up until reaching the Marine

Bridge, it seemed as though it were safe to continue the voyage. Considering the circumstances met by the master of the claimant-respondent's tug, it is encumbent upon the court to determine whether the master was bound to turn back or proceed with the voyage.

The witnesses for the claimant-respondent testified that after passing Marine Bridge, a head sea was encountered, the wind velocity reached a high degree and the water pounded against the Mack. Eleven days later, the damage to the Mack was reported.

The master of the tug controls and dominates the situation and there can be no divided responsibility. Therefore, the court must decide whether or not the captain of tug Gerd H. Henjes was justified in proceeding with the voyage in the face of the storm warning and the conditions of weather he could expect to encounter.

The case at bar, it appears to the court, is controlled by the principle expressed in Bouchard Transportation Co., Inc., v. Pennsylvania Railroad Co., 6 F.2d 362. The Circuit Court of Appeals for the Second Circuit observed in that Opinion:

"The case obviously turns primarily upon the condition of the weather. The hourly wind movement on the 5th, between noon and 11 o'clock, as taken from the top of the Whitehall Building at the southern end of Manhattan Island, varied from 13 miles an hour between 3 to 4 to 29 miles between 9 and 11. The maximum velocity was between 9 and 10, and reached 33 miles at about half past 9. Before the Mercer left the scow, warnings of a southeasterly storm had been raised upon the building. Nevertheless we agree with the learned District Judge in his conclusion that it was not imprudent to leave the barge in the flotilla at half past 10 on that night. On more than 50 days of the year storm signals are raised in the harbor of New York. It is true that masters are chargeable with notice of such warnings (Nicholson v. Erie R. Co. [2 Cir.] 255 F. 54, 166 C.C.A. 382), and are prima facie negligent if they do not see them.

"But the fact of a warning is not enough, without more, to constitute negligence. The Golden Rule [2 Cir.] 278 F. 1021. See the unreported opinion below of Hough, J. We cannot agree that all work in the harbor must be suspended, for a day out of each week because the winds will blow. Scows must be staunch enough to withstand weather which is of such frequent occurrence. While, then, we do not, of course, mean to ignore the warnings as a circumstance, we decline to make them singly an absolute test. A wind of no more than 30 miles is perhaps not of itself a peril to a well-found scow. But we need not go so far, and do not. In using the Weather Bureau velocities, one must make some allowance for the place where they are taken. When the tug master and the barges of the Ox swore that at the Ox the wind was no more than 20 miles an hour at 10:30, they may well have been quite within bounds."

Analogous circumstances surround the present suit. The weather report apprised the tug's master of a storm warning, but it indicated a storm in the area of Block Island to Eastport, Maine, which was moving northeastward, and no storm warning was given for the New York area. The evidence showed that when the tow reached Rockaway Inlet, the water became rougher but there was nothing to manifest impending danger. Furthermore, there is a presumption that vessels must be staunch enough to withstand weather which is of such frequent occurrence and the master of the tug had the right to assume that the Mack was seaworthy enough to withstand the pounding of the water. The damage to the coal box could not have been very extensive inasmuch as the voyage was completed in the usual time and the damage was not reported until eleven days thereafter.

In The Gypsum King, 2 Cir., 178 F. 61, 65, it was said:

"Something more than a mere wind velocity of 25 to 30 miles would seem to be necessary in order to make it the duty of a tug with tow to turn back to seek a harbor.

\* \* \* \* \*

"We cannot find that the master was reckless or imprudent in holding on for the breakwater with what were apparently seaworthy tows against a 32-mile breeze instead of turning back."

In view of these authorities, the court holds that the master of the tug Gerd H. Henjes was not negligent in continuing the voyage. The libel is, therefore, dismissed.